We will now move to the next case on the calendar, that is United States v. Felder. Let me make sure counsel is here. Mr. Silverman. Good morning, your honor, yes. And Ms. Cullen. Yes, your honor, good morning. Okay, great. Alright, so Mr. Silverman, you reserve three minutes for rebuttal, so that gives you seven minutes to start. Go ahead, the floor is yours. Thank you. Good morning, your honor. Benjamin Silverman for Tyrone Felder. This is a case in which there is video of Mr. Felder and three co-defendants running away shortly after a murder. And the question for the jury was whether Mr. Felder was merely present or if, as the cooperator testified, he was responsible for the murder. To corroborate a badly damaged cooperator, the government offered in the middle of the trial its argument that in a blurry image, Mr. Felder can be seen holding a gun. And the relevant images are at pages two and three of the reply brief and 1045 and 1046 of the appendix. The context here is revealing. The video and the images taken from the video were offered by the government's summary witness, its case agent, on the first day of trial. And it was a narration witness. And the witness narrated the video, said there are people here, this is what they're wearing, there's a playground over there, but did not say anything about a gun. The next day, the second day of trial, the government provided notice that it would like to tack back and have the witness go back to that video and testify to an opinion that the government acknowledged had been fully formulated for the first time that morning. That if you look at the blur, you can see a firearm. Whether or not a firearm can be discerned on this blurry image is a factual question and it was for the jury to decide it. But the government did not trust the jury to make that decision. And so it inserted its argument as to what can be seen in the middle of the trial. It is a prerequisite to any opinion testimony, whether lay opinion under 701 or expert opinion under 702, that the testimony be helpful to the jury. And testimony is helpful to the jury if the witness has some basis, either experiential or expert knowledge, that allows him or her to draw inferences that a juror cannot draw. But in a case where the witness was not present at the scene and is just looking at an image that is right before the jury, there is nothing experiential or expert that allows that jury to draw inferences, that allows that witness to draw inferences that are helpful to the jurors. If all the expert is doing is saying that that rectangular shaped object is consistent with a guava because of certain characteristics that I'm familiar with because I'm an expert in the field of firearms, why isn't that permissible? Because your honor, if you can see it, everyone knows what a handgun looks like. Not necessarily, counsel. I mean certain handguns have certain distinguishing features. Here we have a situation where it appears from the photograph that he has something in his hand. Now what it is, is open to question you would urge, I know. But the person says, look I've seen thousands of handguns and this looks to me like such a handgun for these reasons. And he explains, isn't that proper for the jury to hear and then to decide whether it credits that expert opinion. Your honor, I understand what your honor is saying. I would respectfully suggest that it is so common to every woman, man and child what a general handgun looks like. And yes, there are revolvers and semi-automatics, but that was not an issue here. It was not a question as to what... But Mr. Silvan, he testified more specifically, he said this looks like an injection port to me. I don't think the average person knows what an injection port looks like or a slide or a muzzle. Guns come in different sizes, they have different components. Some stick out of a gun that an expert may notice that a juror couldn't notice. So in your reply brief you had some analogies to the hotdog vendor identifying a hotdog and a little leaguer identifying a baseball. But I don't think guns fall into that same category. Baseballs are obviously uniform. Guns are all different sizes and shapes and they have various components that an expert who has looked at 1,200 guns may say, I recognize an ejection port where I or a juror may not know what an ejection port looks like. Your Honor, I would respectfully suggest that the witness's use of expert terminology to describe sort of commonly recognizable features doesn't change the nature of the testimony. When he says ejection port, what he just means is the top half of the gun and he's using fancy language. But I do think it's fair to say that if you have a handgun and there are other images in the record before the jury where there are clearly guns being shown. And there was no objection to narration under Rule 1006 because no inferences need to be drawn. It just looks like a gun because we know what a gun looks like. No one's going to object to someone saying that's a gun if it's clear. And to say an ejection port instead of saying that looks to me like the top half of a gun, I don't think changes the nature of the testimony. It just cloaks the argument as to the blurriness in this expert language. See where I have to question you about that is, then it would seem to me that's a proper subject for cross-examination. Because on cross-examination, counsel could elicit either that an ejection port doesn't look so distinguishing that you can tell that the photograph is depicting that. And then the jury gets to evaluate whether it thinks he really has a basis or whether this is stuff and nonsense. I agree, Your Honor. But in the very short cross-examination, Mr. Patel was stopped by the district court from asking the detective if he was familiar with times when someone had been shot 41 times by police officers who thought that a wallet was a gun. And the follow-up question would be if your vision was this blurry. But that was cross-examination on what a police officer recognized or didn't recognize as a gun. This person was on the stand for purposes of what he understood something to be a gun. He wasn't basing that on a police officer in a charged situation, so the district court excluded it. All of this is subject to abuse of discretion review, isn't it? I agree, Your Honor. But the district court abuses this discretion when it makes a legal error. And we respectfully submit that allowing this sort of argument in the middle of the trial was a mistake of law under your code of which you're not allowed to have argument in the middle of the trial. And I would just emphasize that the government never suggested that this was so clear as to be readily discernible. If they did, they would have brought it out as narration. They offered it as lay opinion based on experience as a police officer. And it was accepted as expert opinion based on experience as a police officer who's familiar with guns. But either way, what you really had was a situation where you needed someone with superior vision, who had a vision that the rest of us don't have, who can see things that the rest of us can't see. And we submit that that is not proper testimony and that's legal error. And I would just say finally that it was not waived. Mr. Runke on page 286 of the transcript said we object as either experiential or expert opinion. We renewed the objection the next day when the government offered it again. The prosecutor acknowledged that the defense has objections. There was a clear and lemonade ruling. Nothing else was required to preserve the issue. And unless the court has any other questions, I will yield back. Thank you. You've reserved three minutes of rebuttal. We'll hear from Ms. Cohen. Good morning and may it please the court. My name is Celia Cohen and I'm an assistant United States attorney in the Southern District of New York. I represent the government on this appeal as I did in a trial below. Because the district court committed no instructional or evidentiary errors below, this court should affirm the jury's conviction of Tyrone Felder for two brutal carjackings in which he shot two cab drivers in the head, killing them, and a string of violent robberies as well as related firearms charges. I'd like to pick up where the court left off on the issue of Detective Fox's expert testimony. To the extent that Felder's complaint is that this was a factual determination for the jury, of course, it's entirely proper for experts to offer opinion testimony related to disputed facts. That is not usurping the role of the jury. That is, in fact, assisting the jury. And as the panel has repeatedly pointed out, Detective Fox did not simply opine that what he viewed on the video was a gun. He was able to, based on his expertise, point out the various component parts of the gun, which was necessary to explain to the jury the foundation for his opinion. So, in contrast to... The timing is a little unusual, would you admit? The timing of offering the testimony, Your Honor, is that what you're saying? Yes. It is, Your Honor, but because, and this was explained to the district court, the volume of surveillance video evidence in this case was enormous. And as this panel is no doubt aware, in preparing for trial, you notice things that maybe eluded you despite extensive investigation in the past. And so, once this particular piece of video was focused on, Detective Fox, on his own, immediately recognized what he believed to be a firearm in Felder's hand, based on his familiarity with the various component parts of a gun, which he explained to the jury. His testimony was offered as expert testimony because defense counsel insisted that it be offered as expert testimony. And I want to be clear on the waiver point. We're not suggesting that Felder waived the argument that somehow this didn't qualify under Rule 702. We're simply saying that to the extent Felder is suggesting it should have been offered as lay rather than expert, that argument is waived because it was offered as expert. You offered it as lay testimony, though, didn't you? Lay opinion? So, originally with Special Agent Kenny, we did offer it as lay opinion, which would have been proper, Your Honor. And Special Agent Kenny's testimony would not have mirrored, identically, Detective Fox's testimony because it would not have been expert testimony. I'm not sure I understand that at all. So, how is lay opinion testimony in light of our decision in Garcia? So, Your Honor, there is actually, this court has upheld lay opinion testimony identifying a firearm that's United States v. Thornhill, 667 Fed Appendix 310. And really the point is... Don't talk about a case. Tell me under the principles articulated in Garcia for distinguishing lay testimony and expert testimony, how this qualifies as lay opinion. Neither officer was there at the time, so they didn't personally witness this. They're looking at it, and as I understand it, their only basis for offering an opinion is their expertise with firearms. So, how would this ever be characterized as lay testimony, lay opinion? Certainly. It could be, as lay testimony, be qualified as lay testimony based on Special Agent Kenny's experience carrying a firearm. The same way that, whether or not he was a police officer, let's say he was a... Just your use of the word experience suggests that you're outside lay opinion. You're relying on something outside the ken of the average juror and not based on the witness's experience in the specific instance that he's testifying about. Look, the district court admitted it as expert testimony, and I think you can be grateful for that. My concern is whether we have to clarify Garcia anymore for you all. Is there something you're not understanding about the distinction? So, Your Honor, I think the court does not have to clarify that in this case, because as you point out, ultimately it was offered as expert testimony, and we are comfortable that it was properly admitted as expert testimony. Well, you were obliged under Rule 16 to give notice of expert testimony, and this did not... I mean, as I understand it, you never gave notice. There was never a summary of testimony provided to the defendant, right? Well, Your Honor, there was Rule 16 notice with respect to Detective Fox's expertise with ballistics. We did describe, but not on this subject. That may go to whether it's harmless, because his expertise was established for a separate purpose, and as I understand it, the district court... He didn't actually offer his opinion until six days after the disclosure. But you never gave the summary of his testimony on this point, right? That's correct, Your Honor. We proffered what that would be prior to his testimony at trial. Defense counsel raised a notice objection, and his testimony was put off to provide them adequate time to prepare, and prior to his testimony, at no point did defense counsel indicate they needed more time to prepare or that they wanted to hire their own expert to offer a contrary opinion. So it's true that the notice of his testimony as to that particular video was given during trial, but I think it's also fair to say that the record demonstrates that defense counsel was given adequate time to either prepare a contrary opinion, prepare its cross-examination, and never raised to the district court that it needed more time than it was given. The other thing I want to point out is that I think Felder mischaracterizes this as expertise in viewing video. It's clearly not about an expertise in viewing video. It's an expertise in identifying the component parts of the gun, as this panel has recognized, and it does not accurately reflect what the testimony was offered for to suggest that he needed to be an expert in viewing video. I'm prepared to answer any other questions that the court may have at this time. Otherwise, we would rest on our papers. Thank you. We'll now hear from Mr. Silverman for three minutes of rebuttal. Thank you, Your Honor. In terms of the issue of obtaining our own expert, I mean, that just gets to the reason why this was not proper opinion testimony. What's our expert supposed to say? I see blurriness here. You could have an expert who says, I've looked at thousands of guns. I can't identify that as a gun. It could be a million other things. You could have a lot of experts who could say, I've looked at many guns, and I can't identify that as being a gun. Your Honor, I appreciate that. I would respectfully suggest that that's just getting into the argument about what can or cannot be seen. And Your Honor noted the analogy in the brief about a hot dog or a baseball or a cup of coffee. But when we're talking about can you see a handgun, what's being suggested is just a back-and-forth argument about can you see the top half of a gun or not. And that's not expertise. That's not scientific. What's the reliable methodology? All of these arguments were made in summation, right? If you can't see a gun, this is all just wishful thinking. And that is a point that the jury was free to consider and accept and reject, right? Yes, Your Honor, but I think that by inserting the argument in the middle of the trial, that is one of the two things here that really creates the harm. And this Court's opinion in Yakovlevich sets that forth. You know, when you have the process of openings and then evidence-taking, and throughout evidence-taking, the jury is instructed repeatedly, daily, multiple times a day, keep an open mind, don't form an opinion. That's to preserve the presumption of innocence right up until the close of evidence. And when you insert this kind of argument in the middle of the trial without the defense arguing back, because it doesn't have a case to put on at that point, we're mid-trial, you're undermining the presumption of innocence. And you're undermining it on an extraordinarily critical fact. There's a reason that the government pushed three times to get this in, because they thought it's obviously very critical. He's running away shortly after a murder. On page 254 of the transcript, the AAUSA acknowledged the District Court concern that there would be a mere presence defense as to this murder. And so whether or not he's holding a gun in his hand is a central critical fact. That's why the government, in its summation, starts with the second murder, which is this murder. Because the evidence of Mr. Felder's presence at the first murder was entirely cooperator-dependent. Mr. Coleman, you indicated earlier in your argument that you thought this was just legal error. So I think you're suggesting to us that a district court should never allow an expert to try to help a jury identify something on a video. I just find that position to be pretty extreme. Suppose you had a terrorism case where a bomb was in a video. Couldn't a bomb expert say, I see a timing device, I see a detonator? Are you suggesting that videos are always something the jury can decipher from the cells without an expert? I would say two things, Your Honor. One point, which I won't belabor, is I do think there's a difference between a timing button. I have no idea what a timing button or a detonator looks like, and I don't think most people do. But I do think that it's judicially noticeable that most women, men and child, all know what a handgun looks like. And so I think that's qualitatively different. And also, I think that the kind of expert that you would need in this case would be someone who is an expert in discerning grainy footage. The government described it as choppy, that's the motion footage. The image that we've reproduced here, this is the exhibit, is plainly blurry. And so I suppose that there could be experts who understand how antiquated video surveillance blurs certain images in a way that you could work backwards to reconstruct a clearer picture. And that would be very helpful expert testimony to provide, but that's not what was offered. What was offered was just argument. I'm not sure I see that either. I mean, sometimes lay and expert, I mean, there can be identifications of people who appear blurry on videos because the witness has much more familiarity with the individual than the jury does. And so here, the expert has much more familiarity with guns than the average lay person. I mean, I would question your view that the average lay person has ever personally seen a gun. He may have seen guns in movies and television shows, but I'm not sure that most jurors have actually seen a handgun. Well, two points, Your Honor. I have three points. One, this case was tried in the White Plain Courthouse, and it's in the Wadir. A significant number of the jurors came from north of New York City, where personal experience with firearms is more common. What's the basis for that? What's your basis for thinking that people in Westchester have more personal familiarity with handguns than people in the city? Well, it was in the Wadir record that a significant number of the jurors were from Orange County and from counties north of Westchester that have firearms laws more similar to the rest of the country. But it's also in the record of this trial that there are images where guns can be clearly seen. So you have a basis just within the trial record to know what a gun looks like. And in terms of the comparison to identifying an individual, I'm not familiar with a case where someone is trying to identify an individual based on personal experience that's not identifiable just on the face of it. So you can have narration, I believe it's in the record of this case, I see that individual walking when the individual's face is clear as day. Or you can have cases where a mugshot is put up next to the video and the jurors can make the decision for themselves. I'm not familiar with a case in which you have a video that's so blurry that the jurors couldn't make the decision based off of seeing the mugshot, seeing the defendant in the courtroom. But then you take a witness familiar with the defendant who was not present at the scene of the video to say, I think that looks like so-and-so. I suppose maybe if there was testimony that so-and-so had a beard back then and that's the kind of beard so-and-so had that they don't have now, that that might be helpful to the jury. But that wouldn't be proper lay opinion based off of experiences and inferences that can be drawn that the witness has that the jurors do not. Thank you, Your Honor. Thank you, Mr. Silverman. And Ms. Bowen, we will reserve the decision. Thank you both.